Mr. Chief Justice Shepard
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner of Patents, canceling a trademark.
Max J. Breitenbacb. obtained registration of “Chologestin” .as a trademark for a medical remedy, April 2, 1907. On February 11, 1908, Hugo Eosenberg obtained registration of “Cliologen,” for a medical preparation.
On May 24th, 1907, F. H. Strong Company, assignee of Breitenbach, filed an opposition to Eosenberg’s registration, the ground thereof being that the mark “Chologestin” and “Cbologen” were applied to goods of the same descriptive properties, and that the latter so nearly resembled the former as to be likely to cause confusion, etc.
Eosenberg answered the same, alleging that if it be the fact that the two marks so nearly resembled each other, etc., be was entitled to registration, nevertheless, because be bad adopted and used “Cbologen” as a trademark long prior to the first use of the other by the opponent.
the opponent, on September 17, 1907, asked leave to withdraw its opposition. The Examiner of Interferences denied the leave, following, by analogy, the practice in patent interference proceedings, and adjudged that Eosenberg was entitled to registration.
After obtaining registration, Eosenberg began this proceeding to cancel the Breitenbacb registration, alleging bis adop *104 tion and nse of the trademark “Chologen” in the United States, long prior to a like nse of “Chologestin” by any other person, as well as its continued use to date. He also alleged that “Chologestin” so nearly resembles his trademark as to be likely to cause confusion in trade. Both the Examiner of Interferences and the Commissioner, on appeal to him, found that Rosenberg had adopted and used his trademark long prior to that of Breitenbach, and that the two so nearly resembled each other as to be likely to cause confusion in trade. Hence the order for cancelation was entered.
The first contention of error in the decision appealed from is that the use of “Chologen” by Rosenberg had not been of sufficient extent, or of such a character, as to create a trademark right. As to the extent of the use, the testimony shows that Rosenberg manufactured his Chologen tablets in Germany. They were first introduced into the United States by Dr. Aaron, of Detroit, in 1903, who frequently prescribed them for patients. The Doctor read a paper before the Detroit Academy of Medicine, October 23, 1905, describing the tablets and recommending them. He first bought 'ten packages of the tablets; each hox containing one hundred, labeled “Chologen Tablets.” The tablet is what is called an “ethical remedy,”—that is, one intended to be sold only on a physician’s prescription, and not as a “patent medicine.” The Doctor turned over some of the packages to a local druggist, Seltzer, who supplied them on his prescriptions. Seltzer began ordering the tablets from a Chicago dealer in 1904, and later direct from Rosenberg. They were then put up in glass bottles in quantity as before. Seltzer handled about 800 packages during 1905, and the same in 1906; a slight increase in 1907. They were sold on prescriptions, and to other druggists. Rhode, a Chicago druggist, ordered from Rosenberg about six dozen packages in 1903, repeating his orders, about nine months apart. He resold them only on physicians’ prescriptions. Since 1906, he ordered the tablets, about two dozen bottles at a time, from Lehn & Fink of New York, and A. Bruckner of Chicago. He commenced to sell some to jobbers in 1904. In- all, he had *105 sold about 300 packages on prescriptions and about 250 to the-trade. When sold on prescription they were a few at a time,, and were taken from the original package and put up in the-druggist’s own boxes. Lehn & Fink, wholesale druggists of Hoboken, New Jersey, purchased from Rosenberg, under an arrangement including advertisement, and have been selling: small quantities to the trade since 1903. The bottles always bore the label, “Chologen Tablets.” While the testimony is uncertain as to the amount of sales, and indicates that they were-neither very great, nor general, it shows that the goods, under the aforesaid label, were on sale by wholesale and retail druggists in Hohoken, Chicago, and -Detroit, from 1903 to the time of taking testimony. The beginning of these sales long outdated the use of Chologestin by Breitenbach or his assignee. We agree-with the Commissioner that the evidence is sufficient to establish a trademark use. It was affixed to the bottles containing the tablets, in good faith, and a trade was established in the-goods in three States, though to a limited extent.
Every trade must have a beginning, and it would be unreasonable and unjust to say that it must be general and the article widely known before the trademark in the name affixed to it,, and indicating its origin, can be acquired. The subject is so ably discussed, and the like conclusion so convincingly stated, in an-opinion of the circuit court of appeals of the 7th circuit, that we shall content ourselves with the following extract therefrom, which we entirely approve: “It is enough, we think, if the article, with the adopted brand upon it, is actually a vendible article in the market, with intent by the proprietor to continue its production and sale. It is not essential that its use has been long continued, or that the article should be widely known, or should have attained great reputation. The wrong, done by piracy of the trademark is the same in such case as in that of an article of high and general reputation, and of long-continued use. The difference is but one of degree, and in the quantum of injury. A proprietor is entitled to protection from the time of commencing the use of the trademark.” Kath *106 reimer’s Malzkaffee v. Pastor Kneipp Medicine Co. 27 C. C. A. 351, 53 U. S. App. 425, 82 Fed. 321.
Apparently it was not feasible to label each tablet separately; ■tbe only practicable method was that adopted; namely, to affix the trademark to each small bottle containing one hundred of. the tablets.
We also agree with the conclusion of the Commissioner that '“Chologestin” so closely resembles “Chologen” as to be likely, when used upon goods of the same general description, to produce confusion in trade. The contention of the appellant, that nonresemblance between the marks has been conclusively established by the decision in the opposition proceeding, is untenable. Rosenberg did not deny that there was this resemblance between the two marks in his answer. Evidently, the -only question there decided was priority of adoption and use. If that decision should have any weight at all on that point, it would be against Breitenbach’s present contention, rather than in its support.
The special ground of his contention was, that having registered “Chologestin,” he would be damaged by the registration -of “Chologen” by Rosenberg, because of the similarity of the two marks. Rosenberg did not deny this, but based his right to registration on prior adoption and use, which fact he established in that proceeding as well as in this. .
There was no error in the decision, and it will be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents. Affirmed.